**G & H MACHINERY COMPANY**

v.

**The UNITED STATES.**

No. 216–84C.

United States Claims Court.

Jan. 9, 1985.

Mark A. Halfers, St. Louis, Mo., for plaintiff.

Ronald A. Schechter, Washington, D.C., with whom were Acting Asst. Atty. Gen. Richard K. Willard, David M. Cohen and Thomas W. Petersen, Washington, D.C., for defendant.

## OPINION

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WHITE, Senior Judge.

This is an action by G & H Machinery Company, the plaintiff, to recover damages, and for other relief, in connection with an alleged breach of contract No. GS-05DP-(P)45869 (the contract), which the plaintiff entered into with the defendant (represented by a contracting officer of the General Services Administration (GSA)) in June 1974.

The case is now before the court on a motion filed by the defendant as a motion to dismiss but which will be treated as a motion for summary judgment, because various evidentiary materials have been submitted for the consideration of the court in acting on the motion. The plaintiff has responded to the motion; and the defendant has replied to the response.

The parties seem to agree on the basic facts of the case.

### The Facts

According to the agreed facts, the contract called for the plaintiff to provide the labor and material necessary to repair certain government machinery. Pursuant to the contract, the GSA on March 18, 1975, issued orders for the modification and winterization of 40 warehouse tractors owned by the Government. Based on these orders, the plaintiff ordered the material that would be needed to perform the work on the 40 warehouse tractors. The material thus ordered by the plaintiff was specifically manufactured for use in modifying and winterizing the 40 tractors involved in the orders of March 18, 1975.

Later, the plaintiff received 29 of the warehouse tractors, and performed the required services on them.

On January 29, 1976, the plaintiff received an order which reduced to 29 the number of warehouse tractors that were to be modified and winterized.

The plaintiff was unable to dispose of the material which it had procured in order to perform the work on the 11 warehouse tractors eliminated from the contract by the order of January 29, 1976, as such material had been specifically manufactured for those warehouse tractors. The plaintiff attempted to turn the surplus material over to the GSA, but that agency refused to accept it.

On October 13, 1978, the plaintiff submitted its claim in this matter to the GSA contracting officer.

The contracting officer, however, did not render a decision on the plaintiff's claim, despite repeated requests by the plaintiff that he do so. Finally, in a letter to the contracting officer under the date of July 15, 1982, the plaintiff stated in part as follows:

> I am at a loss to understand why you have not rendered a decision in this mat-

ter. I must remind you that Title 41, USCA, Section 605(c2) provides that you are to make a decision within sixty (60) days of receipt of a claim or notify me of the time within which a decision will be issued.

If I have not received a response from you within a fairly short time, I will either request that the Board of Contract Appeals directs you to issue a decision or file an appeal without a decision.

In a response dated July 29, 1982, the contracting officer promised the plaintiff that he would render a decision on or before August 31, 1982. This promise was not kept, however, and the contracting officer had not rendered a decision on the plaintiff's claim as of the date, May 1, 1984, when the plaintiff filed its complaint with this court.

*Discussion*

The defendant's motion is based principally upon the contention that the plaintiff did not file its complaint within the time allowed by law for this purpose, inasmuch as the alleged breach of contract occurred in 1976 and the complaint was not filed until May 1, 1984, approximately 8 years later.

The plaintiff, on the other hand, relies upon the failure of the contracting officer to render a decision on its claim, and argues (*inter alia*) that the period of limitations was tolled by the contracting officer's failure to act on the claim. In this connection, the plaintiff says in its brief that the disputes clause of the contract in question required the plaintiff to submit its claim to the contracting officer; and that "[a] claim against the United States does not accrue until any mandatory administrative proceedings are concluded," citing *Lins v. United States*, 231 Ct.Cl. 579, 688 F.2d 784 (1982), *cert. denied,* 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 995 (1983), *Friedman v. United States*, 159 Ct.Cl. 1, 310 F.2d 381 (1962), *cert. denied,* 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963).

■ The difficulty with the plaintiff's position on this point is that, under the provisions of the so-called Wunderlich Act (41 U.S.C. §§ 321, 322 (1976)) in effect at the time when the alleged breach of contract occurred, the disputes clause of a government contract did not cover a claim based upon an alleged breach of contract, and such a claim was not redressable by the contracting officer or other agency personnel under the provisions of the contract. *Cf. United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 412, 86 S.Ct. 1545, 1555, 16 L.Ed.2d 642 (1966). Thus, the filing of a claim with the contracting officer was not a "mandatory" administrative procedure in 1976 if the claim was based on an alleged breach of contract.

It has been held in numerous cases that the running of the limitations period is not affected by an attempt to obtain administrative relief through a procedure not mandated by law (*e.g., Camacho v. United States*, 204 Ct.Cl. 248, 259, 494 F.2d 1363, 1369 (1974); *Steel Improvement & Forge Co. v. United States*, 174 Ct.Cl. 24, 29, 355 F.2d 627, 631 (1966)).

■ At the time of the alleged breach in this case, a contractor's only means of obtaining redress on a breach of contract claim (if it exceeded $10,000, as is true in this case) was to file an action with this court's predecessor, the United States Court of Claims, under 28 U.S.C. § 1491 (1976). Moreover, it was necessary, under the Court of Claims' general limitations provision, that the contractor institute its action in that court "within six years after such claim first accrues" (28 U.S.C. § 2501 (1976)), which the plaintiff in this case failed to do.

Thus, under the law as it existed in 1976, the plaintiff began its action too late.

The plaintiff points out, quite correctly, that the law of government contracts was changed considerably by the Contract Disputes Act of 1978 (Pub.L. 95–563; 92 Stat. 2383), which was enacted on November 1, 1978, and, under section 16 of the act (92 Stat. at 2391), became effective 120 days later. This legislation is codified as 41 U.S.C. § 601 *et seq.* (1982).

Although the plaintiff's claim in this case accrued before the Contract Disputes Act of 1978 became effective, it was still pending before the contracting officer on the effective date of the act. Section 16 of the act provided in part as follows:

* * * Notwithstanding any provision in a contract made before the effective date of this Act, the contractor may elect to proceed under this Act with respect to any claim pending then before the contracting officer or initiated thereafter. [92 Stat. at 2391.]

For the sake of convenience, the pertinent sections of 41 U.S.C. (1982) will be used hereafter in referring to provisions of the Contract Disputes Act of 1978.

It is provided in section 605, among other things, that *"[a]ll claims* by a contractor against the government relating to a contract shall be in writing and *shall be submitted to the contracting officer for a decision"* (emphasis supplied); that the contracting officer "shall issue a decision on any submitted claim of $50,000 or less [the plaintiff's claim in this case was for less than $50,000] within sixty days from his receipt of a written request from the contractor that a decision be rendered within that period"; and, in any event, that the decision of the contracting officer on a submitted claim "shall be issued within a reasonable time, * * * taking into account such factors as the size and complexity of the claim and the adequacy of the information in support of the claim provided by the contractor." Thus, the filing of all claims, including breach claims, with the contracting officer became mandatory. The plaintiff's claim was already before the contracting officer.

Section 609(a)(3) prescribes a special limitations period for a government contractor wishing to obtain judicial relief from this court on a claim. It states in mandatory language that any such action "shall be filed within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim * * *." This language obviously presupposes the rendering of a decision by the

contracting officer before the 12-month period starts to run; and, as previously stated, the contracting officer in this case never rendered a decision on the plaintiff's claim.

In this connection, however, section 605(c)(5) provides in part that "[a]ny failure by the contracting officer to issue a decision on a contract claim within the period required will be deemed to be a decision by the contracting officer denying the claim and will authorize the commencement of * * * suit on the claim * * *." A question arises, therefore, as to what was "the period required" that imposed a time limitation on the contracting officer in this case.

■ Section 605(c)(1), for example, states in part that "[a] contracting officer shall issue a decision on any submitted claim of $50,000 or less within sixty days from his receipt of a written request from the contractor that a decision be rendered within that period." In this connection, the plaintiff's letter of July 15, 1982, to the contracting officer has previously been quoted in part. That letter did not, in specific language, "request" that the contracting officer render a decision on the plaintiff's pending claim within 60 days. On the other hand, the statement in the letter that the contracting officer was required by the statute "to make a decision within sixty (60) days," and the further statement that, in the absence of a response from the contracting officer within a fairly short time, the plaintiff would seek relief elsewhere, indicate that the plaintiff was aware of, and seeking to enforce, the 60-day requirement.

Thus, it seems that the plaintiff's letter of July 15, 1982, should reasonably be construed as a request—even a demand—by the plaintiff that the contracting officer render a decision on the claim within the next 60 days, at the latest. The contracting officer's letter of July 29, 1982, referred to the plaintiff's communication of July 15, 1982, thus indicating that the plaintiff's letter was received by the contracting officer not later than July 29, 1982. Accordingly, the contracting officer was obli-

gated to render a decision on the plaintiff's claim *not later than 60 days from July 29, 1982*.

As previously stated, the contracting officer did not render a decision on the plaintiff's claim within the 60-day period, or, indeed, at any time before the complaint was filed with the court on May 1, 1984.

■ The defendant would have the court hold that, at the latest, the 12-month period of limitations under the Contract Disputes Act of 1978 began to run 60 days after the date on which the contracting officer received the plaintiff's letter of July 15, 1982, and, therefore, that the limitations period expired long before the plaintiff filed the complaint with the court on May 1, 1984. It seems to the court, however, that the defendant's position on this point would compel the plaintiff to bear the consequences of the contracting officer's dereliction of duty in failing to perform his deciding function within the time allowed by law for this purpose. Such a result would be unfair, even in the plaintiff's case.

The plaintiff in this case did have reason to know that its letter of July 15, 1982, calling on the contracting officer to discharge his statutory obligation within 60 days, was received by the contracting officer not later than July 29, 1982. There undoubtedly are other instances, however, where a contractor does not know, or have any reason to know, when—or even whether—a previous request to a contracting officer for a decision on a claim within 60 days was received. It would be most unjust in such a situation to place on the contractor the responsibility of guessing, at its peril, when the 12-month limitations period for seeking judicial relief will begin and end.

Moreover, it will be noted that section 605(c)(5) uses permissive language in providing that a failure by a contracting officer to issue a decision within the period required by law *"will authorize* the commencement of * * * suit on the claim"* (emphasis supplied). That the Congress, in enacting the Contract Disputes Act of 1978, was well aware of the proper language to use when it intended to impose a mandatory requirement is shown by such examples as the following: the provision in section 605(a) stating that all claims by a contractor against the Government relating to a contract *"shall* be in writing and *shall* be submitted to the contracting officer for a decision";  the provision in section 605(c)(1) that, for claims of more than $50,-000, the contractor *"shall* certify that the claim is made in good faith";  and the provision in section 607(e) that an agency board *"shall* provide to the fullest extent practicable, informal, expeditious, and inexpensive resolution of disputes" (emphasis supplied in each example).

The various factors previously mentioned persuade the court that the 12-month limitations period prescribed by section 609(a)(3) on the commencement of an action in this court does not begin to run until the receipt by the contractor of a decision by the contracting officer on the claim. (This assumes, of course, the filing by the contractor of a proper and timely claim with the contracting officer.) On the other hand, section 605(c)(5) authorizes a contractor, without awaiting a decision by the contracting officer, to institute an action for judicial relief at any time after the expiration of the period which section 605(c) allows the contracting officer for the issuance of his decision.

### Election

■ The defendant seems to argue that, as the plaintiff's claim accrued while the general 6-year statute of limitations found in 28 U.S.C. § 2501 (1976) was applicable to contract claims, the plaintiff was somehow required to give formal notice to someone before the expiration of the 6-year period of the plaintiff's election, as permitted by section 13 of the Contract Disputes Act of 1978, to proceed under the new legislation, with its limitations provision specifically applicable to contract claims.

Under the circumstances of this case, as the plaintiff's claim was already pending before the contracting officer on the effective date of the Contract Disputes Act of

1978, and as the new legislation authorized the contracting officer to consider and dispose of breach claims (as well as other contract claims), the court determines that the plaintiff's repeated requests, after the effective date of the new legislation, for a decision by the contracting officer on the claim constituted adequate notice that the plaintiff desired and expected the contracting officer to exercise the latter's new authority to dispose of breach claims.

### Conclusion

For the reasons previously stated, the court concludes that the plaintiff's complaint is not barred by the applicable statute of limitations, and that the defendant is not entitled to a judgment as a matter of law.

Accordingly, the defendant's motion for summary judgment is denied.

IT IS SO ORDERED.