**J & E SALVAGE CO., et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 96–1C.**

United States Court of Federal Claims.

July 18, 1996.

---

**33.** H.R. 5784, Pl.App. at 43.

**34.** 72 Stat. 931.

Jeffrey S. Miller, Jacksonville, NC, for plaintiff.

Lesleyanne Koch Kessler, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger, for defendant. Gregory J. Gushing, Defense Reutilization & Marketing Division, of counsel.

## ORDER

MILLER, Judge.

This case is before the court on defendant's motion to dismiss for failure to state a claim upon which relief may be granted pursuant to RCFC 12(b)(4). The issue to be decided is whether defendant's refusal to return to plaintiffs certain property placed in containers purchased by plaintiffs constitutes a compensable taking under the just compensation clause of the Fifth Amendment. Argument is deemed unnecessary.

### FACTS

The following facts derive from the complaint and are undisputed, unless otherwise noted. On May 19, 1992, at the bequest of the United States Department of Defense, the Defense Reutilization and Marketing Office (the "DRMO") held an auction at Cherry Point, North Carolina, to sell certain surplus materials. John and Teresa Darlington, general partners of J & E Salvage Co. ("plaintiffs"), purchased several "lots" of surplus merchandise at this auction. At the time of the sale, the purchased goods appeared to be solely large containers used for shipping and storing helicopter transmissions. Because the containers were bolted shut at the time of the sale, plaintiffs were unable to ascertain what, if anything, was inside the containers.

After plaintiffs paid for the merchandise, government personnel loaded the goods onto plaintiffs' truck for transportation to their company in Onslow County, NC. At some point after returning to their place of business, plaintiffs opened the containers and discovered that four of them held surplus helicopter transmissions valued at $289,660.00 each.

Plaintiffs notified the DRMO of their discovery so as to avoid any accusations of having acquired the transmissions through illegal means. The DRMO responded by informing plaintiffs that the transmissions were still government property and should be returned immediately. Plaintiffs refused to acquiesce. Subsequently, as opposed to utilizing the Contract Disputes Act, 41 U.S.C. §§ 601–613 (1994) (the "CDA"), the DRMO filed suit in the United States District Court for the Eastern District of North Carolina on November 12, 1992, seeking a return of the transmissions.

In their response to the lawsuit, plaintiffs claimed that the CDA governed the matter and thus the federal district court was without subject matter jurisdiction to hear the case. The district court held that it had requisite jurisdiction and that the helicopter transmissions were government property and required plaintiffs to relinquish possession of the transmissions. Moreover, the district court declined to dismiss the Government's claim for compensatory and punitive damages. *United States v. J & E Salvage Co.*, No. 92–162–CIV–4–H (E.D.N.C. Aug. 19, 1994) (unpubl.).

Plaintiffs, fearing the district court's contempt power, obeyed the order and turned the transmissions over to the DRMO on September 9, 1994. Furthermore, to avoid the potential financial ruin of an adverse damages award, plaintiffs entered into a pre-appeal stipulation agreement with the DRMO in which they agreed to pay liquidated damages if the appeals court held that plaintiffs had wrongfully converted the helicopter transmissions. In return the DRMO agreed that if judgment were entered for plaintiffs, it would return the transmissions. Plaintiffs subsequently appealed the district court's judgment to the United States Court of Appeals for the Fourth Circuit on November 9, 1994. On June 14, 1995, the Fourth Circuit reversed and remanded with instructions to grant plaintiffs' motion to dismiss for lack of subject matter jurisdiction. *United States v. J & E Salvage Co.*, 55 F.3d 985 (4th Cir.1995).

Subsequently, on August 3, 1995, plaintiffs' counsel sent a letter to the United States Attorney for the Eastern District of North Carolina requesting that the DRMO return the helicopter transmissions to plaintiff. In response the DRMO sent plaintiffs a document written by Dan Hurston, who plaintiffs claim was not the cognizant contracting officer, entitled "Finding of Fact and Final Decision." This document indicated that the DRMO would not return the transmissions to plaintiffs.

On January 2, 1996, plaintiffs filed a complaint in the United States Court of Federal Claims seeking an award of damages in the amount of $1,158,640.00, plus interest and attorneys' fees. In lieu of an answer, defendant moved to dismiss the complaint for failure to state a claim upon which relief may be granted. Defendant asserted that the dispute in this case is not a Fifth Amendment takings claim, but is rather of a contractual nature. Plaintiffs rejoined that full ownership of the transmissions vested after the auction; thus, the DRMO's refusal to return the transmissions constitutes a taking in violation of the Fifth Amendment.[1]

## DISCUSSION

 "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Accordingly, if plaintiffs are unable to assert a set of facts supporting the claim, the motion to dismiss should be granted. *Chang v. United States*, 859 F.2d 893, 894 (Fed.Cir.1988). The severity of such a motion requires that the court "assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir.1995). To surmount defendant's motion to dismiss, plaintiffs must allege a set of facts demonstrating a sufficient property interest in the helicopter transmissions to render the Government's refusal to return

1. Plaintiffs have requested leave to amend their complaint, rather than suffer a dismissal, should the court rule that plaintiffs have failed to state a claim for a taking.

the transmissions a taking in violation of the Fifth Amendment.

■ Plaintiffs contend that the parties entered into an "as-is" contract for the auction sale of certain surplus goods. Plaintiffs argue that the contract was fully performed upon completion of the sale and that they had obtained title and ownership of the helicopter transmissions. As a consequence plaintiffs assert that the Government's failure to return the transmissions constitutes a taking in violation of the Fifth Amendment. Defendant, however, suggests that plaintiffs' claim should properly be characterized as a breach of contract, not a taking.

■ To state a valid claim for a taking under the Fifth Amendment's just compensation clause, plaintiffs must establish a compensable property interest. *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1027, 112 S.Ct. 2886, 2899, 120 L.Ed.2d 798 (1992) (regulatory taking); *Kaiser Aetna v. United States,* 444 U.S. 164, 179–80, 100 S.Ct. 383, 392–93, 62 L.Ed.2d 332 (1979) (taking through physical invasion). If a claimant fails to establish a compensable property interest, no further analysis is necessary.

■ In this case plaintiffs allege a compensable property interest that is derived through their sales contract with the DRMO. Plaintiffs' reliance on an alleged contractually-based property right poses a significant hurdle that must be overcome. "[T]he concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract. In such instances, interference with such contractual rights generally gives rise to a breach claim not a taking claim." *Baggett Transp. Co. v. United States,* 969 F.2d 1028, 1034 (Fed.Cir.1992) (quoting *Sun Oil Co. v. United States,* 215 Ct.Cl. 716, 770, 572 F.2d

786, 818 (1978) (citation omitted)); *see also J.J. Henry Co. v. United States,* 188 Ct.Cl. 39, 46, 411 F.2d 1246, 1249 (1969) ("The amendment has limited application to the relative rights in property of parties litigant which have been voluntarily created by contract.").

■ Not every deprivation of use or control constitutes a taking. *Sun Oil Co.,* 215 Ct.Cl. at 769, 572 F.2d at 818. Furthermore, "[w]hen the government 'takes' property, it exercises its rights as sovereign to acquire property from the rightful owner for the public good." *DSI Corp. v. United States,* 228 Ct.Cl. 299, 302, 655 F.2d 1072, 1074 (1981). In the case at bar, plaintiffs do not allege or argue that the Government intended to take the transmissions for the public good. *See J.J. Henry Co.,* 188 Ct.Cl. at 46, 411 F.2d at 1249. Rather, nothing in the complaint, or that reasonably could be inferred from it, indicates that the Government was acting other than in its proprietary capacity to dispose of certain surplus materials among which were the helicopter transmissions in question.[2] When the Government "comes down from its position of sovereignty, and enters the domain of commerce, it submits itself to the same laws that govern individuals there." *Sun Oil Co.,* 215 Ct.Cl. at 770, 572 F.2d at 818 (quoting *Cooke v. United States,* 91 U.S. 389, 398, 23 L.Ed. 237 (1875)). As a consequence, a takings claim cannot be based on the Government's acting in its proprietary capacity. *Alaska Airlines, Inc. v. Johnson,* 8 F.3d 791, 798 (Fed.Cir.1993).

Moreover, the parties in this case dispute the terms of the contract of sale. The Government clearly did not utilize its position as sovereign to appropriate private property from its rightful owner. Instead, each party is asserting a claim of right to the helicopter

---

**2.** Plaintiffs have suggested that the auction to dispose of the surplus property was a special situation wherein the Government acted in its sovereign capacity to simply dispose of large amounts of unneeded property as promptly as possible. In such situations, plaintiffs contend, each participant assumes a certain amount of risk with regard to the transaction. In support of this argument, plaintiffs rely on *Appeal of John T. Gonsalves,* ASBCA No. 31874 (1986), an un-

published decision wherein the Armed Services Board of Contract Appeals refused to require a bidder to return 43 seeker heads for sidewinder missiles that the Navy had inadvertently left in containers purchased at a surplus sale. While *Gonsalves* may be persuasive with respect to the scope of the sales contract, that the ASBCA entertained the case certainly militates against plaintiffs' argument that the action is a taking.

transmissions in question, so that neither party has clear title to the property. The dispute devolves to whether the Government breached the terms of its contract of sale with plaintiffs by failing to provide plaintiffs with all of the property to which plaintiffs believe they are entitled. In a similar situation, the United States Court of Claims noted that: "In essence, th[e] ... case involved a contest between two parties over conflicting claims of ownership. On such facts, it is axiomatic that there is no taking where, pursuant to a court order, the government is in possession of property to which it asserts a claim of rightful ownership." *DSI Corp.*, 228 Ct.Cl. at 303, 655 F.2d at 1074.

Plaintiffs also assert that upon paying for the surplus goods, the contract was fully performed and that they had acquired clear title to the helicopter transmissions. Therefore, according to plaintiffs, this action cannot be of a contractual nature and, in fact, properly is characterized as a taking. However, the Government's alleged failure to provide plaintiffs with all of the property to which plaintiffs believe they are entitled indicates that the contract cannot have been fully performed. Because the contract has not been fully performed, ownership has not vested with plaintiffs. Plaintiffs therefore have failed to allege a set of facts supporting a takings claim under the Fifth Amendment.

 In evaluating plaintiffs' request to amend their complaint, the court must consider "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment...." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). No factors are present that would suggest that the court should not grant plaintiffs' request for leave to amend. *Cf. Mitsui Foods, Inc. v. United States*, 867 F.2d 1401, 1404 (Fed.Cir.1989)

(denying plaintiff leave to amend on ground of futility). Rather than dismissing plaintiffs' claim pursuant to RCFC 12(b)(4), the court grants plaintiffs leave to amend their complaint to allege a breach of contract claim.[3]

### CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED,** as follows:

1. Defendant's motion to dismiss is denied.

2. By August 1, 1996, plaintiffs may amend their complaint to allege a breach of contract claim, with service by overnight express mail.

3. Defendant shall respond to plaintiffs' amended complaint by August 11, 1996, with service by overnight express mail.

---

**3.** In its reply defendant noted that it opposes plaintiffs' request to amend their complaint and that, if such leave is granted, defendant likely would file a motion pursuant RCFC 12(b)(1) to dismiss for lack of subject matter jurisdiction. In support of its motion to dismiss, defendant included several documents as an appendix to its reply brief. These documents would controvert plaintiffs' version of the terms of sale and be appropriate for consideration on a motion for summary judgment. The court, however, cannot consider material beyond the pleadings when evaluating a motion to dismiss under RCFC 12(b)(4).