Slip Op. 04-43

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| UNITED STATES, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Court No. 03-00047 |
| | : | |
| LEONARD GULDMAN and | : | |
| L&M FIRING LINE, INC., | : | |
| | : | |
| Defendants. | : | |

[Defendants' motion for summary judgment denied.]

Dated: April 28, 2004

Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (David Samuel Silverbrand, Cristina Carlucci Ashworth, and William K. Olivier), David Goldfarb, Assistant Chief Counsel, Jennifer Stilwell, Attorney, United States Bureau of Customs and Border Protection, of counsel, for plaintiff.

Law Offices of Charles H. Bayar (Charles H. Bayar), James A. Dubee, of counsel, for defendants.

## MEMORANDUM OPINION AND ORDER

**RESTANI, Chief Judge:**

Defendants move for summary judgment in this action, in which the Government seeks to enforce a civil penalty for Defendants' alleged fraudulent, grossly negligent, and negligent importation of a firearm. Defendants' motion presents two issues. First, the court must determine whether the Government's allegedly improper service of the summons and complaint

precludes it from exercising personal jurisdiction over Defendants.  If personal jurisdiction

exists, the court must then determine whether the statute of limitations bars the Government's

claims.  For the reasons that follow, Defendants' motion is denied.

## JURISDICTION AND STANDARD OF REVIEW

The court has subject matter jurisdiction over this penalty recovery action pursuant to 28

U.S.C. § 1582(1) (2000).  Summary judgment to Defendants is appropriate only "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law."  USCIT R. 56(d).

## BACKGROUND

The material facts are not in dispute.  Defendants purchased an Express Maxim firearm

from S.A.B. Societa Armi Bresciane S.r.L. ("Gamba Italy") in early 1996 for $27,500 and a small

credit from Gamba Italy.[1]  First National Gun Banque, d/b/a Gamba USA, was the importer of

record for the Maxim, which entered into U.S. commerce through the port of Denver, Colorado,

on or about March 29, 1996, Entry No. 110-0566524-3.  Gamba USA presented an invoice to the

United States Customs Service ("Customs"), now known as the United States Bureau of Customs

and Border Protection, that grossly understated the firearm's purchase price at $12, which in turn

greatly reduced the amount of import duties and other fees collected by Customs.  Customs

---

[1] It is undisputed that the firearm itself cost $12,000, and that defendants paid an additional $15,500 for extensive custom engraving.  Plaintiff avers that the credit note taken from Gamba Italy was for $3000, but Defendants maintain that the note was actually for 3,000 Italian lira (approximately $690).  Compl. ¶ 9, Defs.' Mot. Summ. J. Ex. A; Answer ¶ 8, Defs.' Mot. Summ. J. Ex. B.  The parties' factual dispute on this point is not material to the disposition of the present motion.

treated the initial declaration as a clerical error and determined that the invoice should have read

$12,000, the actual purchase price of the basic weapon.  Compl. ¶ 7, Defs.' Mot. Summ. J. Ex. A.

An additional invoice in the amount of $15,500 for extensive custom engraving of the Maxim,

which was allegedly sent only to Defendants, was never supplied to Customs.[2]

As a result, Customs issued Defendants a Notice of Penalty or Liquidated Damages

Incurred and Demand for Payment ("Penalty Notice") in the amount of $52,000 under 19 U.S.C.

§ 1592 on August 21, 1997.  Defs.' Mot. Summ. J. Ex. F.  The Penalty Notice advised that, by

failing to inform the importer of record and/or Customs of the true value of the firearm,

Defendants caused the actual duties, merchandise processing fees, and excise taxes not to be

paid, as well as caused the correct Bureau of Alcohol, Tobacco and Firearms license not to be

filed.  Id.  The Notice stated that "[t]he penalty is issued at the fraud level for the domestic value

of the rifle."  Id.

In exchange for a mitigated penalty of $16,712.08 and an extension of time in which to

pay it, Defendant Leonard Guldman, President of L&M Firing Line, executed a series of one-year

waivers of the limitations period in 19 U.S.C. § 1621.  Customs prepared the waivers, which

Guldman had only to sign and date.  The first waiver was signed on August 27, 2000, and waived

the statute of limitations for one year, "commencing with the date of execution."  Pl.'s Opp. to

Defs.' Mot. Summ. J. Ex. 1.  The Chief of the Penalties Branch, Charles D. Ressin,

---

[2] In its complaint, Customs alleged that Defendants knew that there were two separate invoices for the firearm, but that they failed to disclose the existence of the invoice for $15,500 to Gamba USA or to Customs.  Compl. ¶ 10, Defs.' Mot. Summ. J. Ex. A.  Defendants admitted that they received the two invoices from Gamba Italy, but disclaimed any knowledge of the documentation sent by Gamba Italy to Gamba USA, the importer of record, and the existence of a § 1592(a) violation by Defendants.  Answer ¶ 10, Defs.' Mot. Summ. J. Ex. B.

acknowledged the waiver "commencing on August 27, 2000 and effective through August 27, 2001," a copy of which was forwarded to Defendants approximately two months later. Id. Exs. 2 & 5. Defendants again waived the statue of limitations on April 13, 2001, "for a period of one (1) year, commencing with the date of execution." Id. Ex. 3. Chief Ressin again confirmed receipt of the waiver by letter and stated that it was "effective through April 13, 2002." Id. Ex. 4. A copy of the acknowledgment was forwarded to Defendants by letter dated May 24, 2001. Id. Ex. 6. Guldman executed the third and final waiver on February 5, 2002. Defs.' Mot. Summ. J. Ex. H. It was, in all material respects, identical to the two prior waivers Guldman had signed. Customs again sent a letter to Guldman acknowledging that "the waiver is made for a one-year period commencing on February 5, 2002, and effective through February 5, 2003." Id. Ex. I.

Throughout this time, the parties' attempts to resolve the matter were unsuccessful. Customs then filed the summons and complaint in this action on February 5, 2003, one year and one day after Guldman executed the final one-year waiver of the statute of limitations. The complaint alleged that Defendants caused the Maxim firearm to be entered or introduced into U.S. commerce by means of entry documents containing material and false statements, acts, or omissions as to the Maxim's purchase price in violation of 19 U.S.C. § 1592. Compl. ¶¶ 5–6, Defs.' Mot. Summ. J. Ex. A. In their answer, Defendants averred, among other things, that the court lacks personal jurisdiction over them as a result of Plaintiff's improper service of process, and that the complaint was untimely filed beyond the period of limitations in 19 U.S.C. § 1621. Answer ¶¶ 32–33, Defs.' Mot. Summ. J. Ex. B. Defendants filed the instant motion for summary judgment on December 5, 2003, claiming that the action should either be dismissed without prejudice for improper service of process or dismissed as time-barred.

**DISCUSSION**

**A.    Whether the Action Should Be Dismissed Without Prejudice for Improper Service of Process**

Rule 4(c)(1) of the Rules of the United States Court of International Trade ("USCIT") provides that "[s]ervice of summons and complaint may be effected by any person <u>who is not a party</u> and who is at least 18 years of age." USCIT R. 4(c)(1) (emphasis added). Defendants argue that the summons and complaint were improperly served upon them by a Customs agent—a representative of the Government and thus a party in this action—in contravention of the rule. They also maintain that the Government has no "good cause" for its failure to effectuate proper service that would justify an extension of time. <u>See</u> USCIT R. 4(m) (providing the court with discretion to "extend the time for service for an appropriate period" upon plaintiff's showing of "good cause").

This argument is without merit. Customs agents are specifically authorized by Congress to "execute and serve any order, warrant, subpoena, summons, or other process issued under the authority of the United States." 19 U.S.C. § 1589a(2) (2000). The rules of this court clearly contemplate that Government agents, such as United States marshals, may serve process. <u>See</u> USCIT R. 4(c)(1). Similarly, other courts have recognized that a Government employee may serve process as a representative of the Government in full compliance with the corresponding Federal Rule of Civil Procedure. <u>See, e.g.</u>, <u>United States v. Kahn</u>, No. 5:02-CV-230-OC-10GRJ, 2003 WL 22384761 (M.D. Fla. Sept. 2, 2003) (rejecting argument that the Government's complaint should be dismissed for improper service of process because defendant was personally served by an IRS officer). Accordingly, the court finds that the Customs agent who served

Defendants was merely acting as a representative of the United States and was not a "party" for the purposes of USCIT Rule 4(c)(1).

**B.      Whether the Action Must Be Dismissed As Untimely Filed**

Defendants maintain that, even if service of process was proper, this action is barred by the applicable five-year statute of limitations.  See 19 U.S.C. § 1621(1) (2000) ("[I]n the case of an alleged violation of section 1592 or 1593a of this title, no suit or action . . . may be instituted unless commenced within 5 years after the date of the alleged violation or, if such violation arises out of fraud, within 5 years after the date of discovery of fraud.").  Although Defendants admit that they waived the statute of limitations "for a period of one (1) year, commencing with the date of execution" on February 5, 2002, they assert that the waiver expired by its own terms on February 4, 2003, rendering this action, filed the following day, untimely.  See Defs.' Mot. Summ. J. Ex. H; Defs.' Mem. in Supp. of Mot. Summ. J. at 13.  "The party asserting this defense must first establish a prima facie case that the claim is time barred . . . .  If a prima facie case is established, the burden then shifts to the plaintiff to show that some exception to the statute of limitations existed."  United States v. Thorson Chemical Corp., 16 CIT 441, 444, 795 F. Supp. 1190, 1192–93 (1992).

There is no dispute that the Government's claims are prima facie time-barred.[3]  The only issue is whether the one-year waiver Defendants signed on February 5, 2002, bars the instant

---

[3]  The Penalty Notice seeking to impose penalties "at the fraud level for the domestic value of the rifle" was issued to Defendants on August 21, 1997.  Accordingly, the statute of limitations on Count I of the complaint (fraud) began to run, at the latest, on that date, rendering the Government's fraud claim prima facie time-barred after August 21, 2002.  Counts II and III of the complaint (gross negligence and negligence) are prima facie time-barred after March 29, 2001, five years after the alleged violations.  The summons and complaint herein was filed on February 5, 2003.

action, which was filed on February 5, 2003. As an initial matter, the court rejects the

Government's claim that Defendants waived their statute of limitations defense by not

specifically pleading it in their answer.[4] Nevertheless, as discussed infra, the court finds that

Customs's application of the "anniversary method" in computing the waiver's expiration date[5]

was appropriate given the waiver's ambiguity and the applicable law.

The court has long analogized the computation of effective dates of statute of limitations

waivers with the computation of the limitation periods themselves. Statutes of limitation are

---

[4] Defendants unequivocally asserted in their answer that "[t]his civil action is untimely brought beyond the period of limitations set forth in 19 U.S.C. § 1621." Answ. ¶ 32, Defs.' Mot. Summ. J. Ex. B. Defendants continued that the action was time-barred because their offer of a waiver of the statute of limitations was not accepted by a Customs official invested with authority to do so. Id. In their motion for summary judgment, Defendants argue for the first time that the suit was untimely filed because the waiver, by its express terms, expired the day before the Government filed the summons and complaint. The Government asks the court to find that the affirmative defense was waived because the specific legal argument relied upon in Defendants' motion was not raised in their answer.
        Rule 8(d) of this court merely requires Defendants to "set forth affirmatively" their defense of statute of limitations. USCIT R. 8(d). There is no dispute that Defendants have satisfied this basic requirement. The question of whether they are then limited by the specific legal theory advanced in support of the defense in their answer is a closer one, but must also be resolved against Plaintiff. "The purpose of [USCIT Rule 8(d)] is to put opposing parties on notice of affirmative defenses and to afford them the opportunity to respond to the defenses." Daingerfield Island Protective Soc'y v. Babbitt, 40 F.3d 442, 444 (D.C. Cir. 1994). Because the statute of limitations defense was affirmatively pled in their answer, the Government was clearly put on notice that Defendants intended to assert the defense in this action. The Government also had the opportunity to—and did—respond to Defendants' specific arguments raised here in its opposition to Defendants' motion for summary judgment. As a result, the court finds that Defendants satisfied both the rule's express requirement and its underlying purpose. See id. at 445 ("[W]hile a limitations defense must 'be asserted in a responsive pleading,' it 'need not be articulated with any rigorous degree of specificity,' and is 'sufficiently raised for purposes of Rule 8 by its bare assertion.'") (citation omitted).

[5] The Government defines the "anniversary method" as follows: "Pursuant to this method, a waiver does not expire until the anniversary date of its execution has passed. For calculation purposes, the actual date of commencement is excluded from the one year period." Pl.'s Mem. in Supp. of Opp'n to Defs.' Mot. Summ. J. at 3.

"construed to include the anniversary date of the accrual of the cause of action" under USCIT Rule 6(a). United States v. Neman Bros. & Assocs., 15 CIT 536, 538, 777 F. Supp. 962, 964 (1991). Rule 6(a) provides that, "[i]n computing any period of time prescribed or allowed by these rules, . . . the day of the act, event, or default from which the designated period begins to run shall not be included." USCIT R. 6(a). Thus, an action filed on the anniversary date of the accrual of the cause of action would be timely filed under a statute of limitation running "from" or "after" the date of the alleged violation. See 19 U.S.C. § 1621(1) (prescribing the five-year statute of limitations applicable here). In Neman Brothers, the court found that the anniversary method was the appropriate tool for computing the effective dates for waivers of the statute of limitations "[b]ecause Rule 6(a) of this Court is analogous to Fed. R. 6(a), and other precedent holds that the time computation method used in Fed. R. 6(a) applies to waivers." 15 CIT at 538, 777 F. Supp. at 964. The Neman Brothers court concluded that the waiver at issue—which was valid for "one (1) year commencing August 1, 1988 "—was valid through the anniversary date of its execution, so that the Government's action filed on that date was not barred by the statute of limitations. Id.

Neman Brothers has remained good law for over ten years and has informed Customs's polices and procedures with respect to § 1621(1) waivers since that time. Just last year, however, the court refused to follow Neman Brothers in light of the explicit language used in the waiver at issue, which provided that the waiver period "commenc[ed] on December 14, 1999." United States v. Inn Foods, Inc., 264 F. Supp. 2d 1333, 1338 (emphasis added), reconsideration denied by 276 F. Supp. 2d 1359 (Ct. Int'l Trade 2003), appeal docketed 04-1035 (Fed. Cir. Oct. 23, 2003). The Inn Foods court found that such unambiguous language rendered a penalty recovery

COURT NO. 03-00047 PAGE 9

action untimely when filed on the waiver's anniversary date. Id. Crucial to the court's holding was that, given that waiver's explicit designation of its commencement date, Rule 6(a) was inapplicable. Id. at 1337.

Defendants assert that Neman Brothers incorrectly analogized USCIT Rule 6(a) to the waiver in question and that the court should follow Inn Foods. The court finds, however, that the facts of the present case distinguish it from Inn Foods and render it more like Neman Brothers, which correctly looked to Rule 6(a) to resolve the ambiguity as to the proper computation of the waiver's effective dates. As previously discussed, Defendants' February 5, 2002 waiver of the statute of limitations was effective "for a period of one (1) year, commencing with the date of execution." Defs.' Mot. Summ. J. Ex. H (emphasis added). The waiver did not explicitly state the date that it became operative or the date that it expired, rendering it quite unlike the waiver in Inn Foods. Here, the term "commencing with the date of execution" could mean "commencing on" that date, or could mean, like the applicable statute of limitations, "commencing from" or "after" that date.[6] In looking solely at the express terms of the waiver, it is impossible to ascertain whether the parties intended to abandon the established anniversary method for calculating the waiver's effective dates.

Given the waiver's ambiguity, the court has considered the extrinsic evidence related to the parties' intent and understanding of the waiver's terms. See Julius Goldman's Egg City v. United States, 697 F.2d 1051, 1058 (Fed. Cir. 1983) (stating that the parties' conduct before a

---

[6] Looking to dictionary definitions of the term "with" is not helpful, because such definitions do not shed light on the particular issue presented, where both a procedural rule and court precedent include the anniversary date of the operative event for time computation purposes.

controversy arises is relevant to ascertaining the parties' intent). Over the years, the Government mailed Defendants three different acknowledgment letters explicitly applying the anniversary method to compute the waivers' effective dates. Defendants never disputed Customs's interpretation of the waivers and continued to sign them as written and interpreted by Customs. Even more striking is that Defendants' answer, while pleading the statute of limitations defense, did not argue that the anniversary method was inappropriate. Defendants did not challenge the anniversary method until the subsequent issuance of the Inn Foods decision, raising their argument for the first time in this motion. See supra n.4. Based on the foregoing, the court concludes that the parties' intent, as evidenced by their conduct, was to compute the waiver's effective dates by applying the established anniversary method. Accordingly, the present action was timely filed.

**CONCLUSION**

The waiver "commencing with the date of execution" is ambiguous, and the extrinsic evidence submitted with the briefs supports the Government's argument that the parties objectively intended to use the anniversary method to compute the effective dates of the February 5, 2002 waiver. Defendants' conduct from the time they received the first acknowledgment in 2000 until the filing of the present motion indicates that they understood the waiver in the same manner as the Government. Because the Defendants' waiver was still in effect on the date the

Government filed this action, Defendants are not entitled to summary judgment on the ground that the suit was untimely filed.  Accordingly, the Defendants' motion for summary judgment is DENIED.

SO ORDERED.


                                                                        /s/    Jane A. Restani
                                                                            Jane A. Restani
                                                                            Chief Judge


Dated:  New York, New York.

This 28th day of April, 2004.